## EATON *v.* CLEVELAND, ST. L. & K. C. RY. Co. *et al.*

### SHROP *v.* SAME.

*(Circuit Court, E. D. Missouri, E. D.    February 21, 1890.)*

1. JUDGMENT—POWER TO STAY EXECUTION—FEDERAL COURTS.
   The federal circuit court has power to grant a temporary stay of execution of its judgments.

2. SAME—RAILROAD COMPANIES—MECHANICS' LIENS—FORECLOSURE.
   Under Rev. St. Mo. 1879, § 3215, an execution sale under a judgment foreclosing a mechanics' or contractors' lien against a railroad is for the benefit of all lienholders who have obtained judgment at the time of the sale.

3. SAME.
   Where judgment had been obtained by 2 lienholders, and 20 or more suits to enforce other liens against the same property were pending, but judgment had not been reached. *held* that, to prevent a sacrifice of the judgment debtors' interest, and to avoid the expense of numerous sales, and complications of title resulting from same, the court would temporarily stay execution on the first judgment until other claims were reduced to judgment.

At Law.    On motion to stay executions.

*Taylor & Pollard*, for Eaton.
*Cantwell & Edwards*, for Shrop.
*Hiram J. Grover*, for defendant Railroad.

THAYER, J.    In these cases motions for a temporary stay of execution on the judgments have been filed. . When the motions were argued, counsel strenuously contended that the court had no power to grant a temporary stay of execution, and that it would be a clear violation of the rights of the judgment creditors to withhold execution, even for a short period. A cursory examination of that question satisfies me, however, that all courts of common law have power to temporarily stay executions on judgments by them rendered, whenever it is necessary to accomplish the ends of justice. In *Sawin* v. *Bank*, 2 R. I. 383, the court said:

"We are satisfied that the court has an entire control over its process, and that it is in the discretion of the court to grant or stay the execution in each

. .particular case, according to the circumstances. But this discretion must be judicially exercised," etc.

In that case it was held that an execution ought to be stayed when it appeared that the owner of a judgment against two partners, by collusion with one of them, intended to levy it on the property of one partner, contrary to equities existing between them. In *Robinson* v. *Yon,* 8 Fla. 355, the court said:

"Courts of law have full power to revoke, correct, restrain, or quash their own process, in the course of their own ordinary jurisdiction."

In *Steere* v. *Stafford,* 12 R. I. 131, A. recovered a judgment against B., and, A. being insolvent, the court ordered a stay of execution on the judgment against B., until the decision of a suit then pending, brought by B. against A., basing its right to do so on its common-law powers to stay its own process, when it seemed equitable to do so. In *Com.* v. *Magee,* 49 Amer. Dec. 509, and 8 Pa. St. 240, it was held that a judge had power in vacation to make an order staying an execution, and that such order was binding on the sheriff. In *Knox* v. *Hexter,* 42 N. Y. Super. Ct. 496, a stay of execution was ordered until the termination of a suit brought by the judgment debtor against the judgment creditor, to enable the judgment debtor to offset any recovery had in the pending suit. In the case of *Phillips* v. *Evans,* 64 Mo. 24, where a levy had been made under an execution on a part of a lot, the whole of which was covered by a building, it was said that courts ought not to permit their final process to be abused in that manner, but should stay the execution of such process. Mr. Freeman, in his work on Executions, in section 32 says:

"The power of courts to temporarily stay the issuing of execution is exercised in an almost infinite variety of circumstances, in order that the ends of justice may be accomplished. In many cases this power operates almost as a substitute for proceedings in equity, and enables the defendant to prevent any inequitable use of the judgment or writ."

And the note to the case of *Com.* v. *Magee,* 49 Amer. Dec. 513–516, shows numerous cases and a variety of circumstances under which the power has been exercised. While the power to temporarily stay execution on its judgments resides in every court, it must be conceded that it is a power that ought to be cautiously exercised, and only in those cases where it seems necessary to promote the ends of justice. In other words, it ought not to be arbitrarily used, nor should an execution be withheld merely because it is inconvenient for a judgment debtor to pay his debts.

The question to be determined, therefore, is whether the circumstances of this case justify the court in withholding execution for a short period. The facts are that two judgments have been obtained in this court foreclosing lien claims for work and labor done in constructing a railroad. The road is not completed yet, but, as the proof shows, considerable grading has been done on various sections of the road, in different counties, and several hundred thousand dollars have been spent in the prosecution of the work. Other liens than those on which judgments have been obtained in this court have been filed in St. Charles and War-

ren counties, Mo., and suits are now pending in St. Charles county to enforce such liens. According to the statement furnished me, the lien claims pending elsewhere amount to something over $100,000, and the number of lien claimants are more than 20. Under the laws of this state, (Rev. St. Mo. 1879, § 3215,) a sale under an execution upon a judgment foreclosing a contractor's lien against a railroad is for the benefit only of such lienholders as have secured judgment at the date of the execution sale. Lienholders who recover judgment after such sale, have, as it seems, no right to prorate with the judgment creditor under whose judgment a sale takes place. The result would seem to be that if a sale takes place under the judgments in this court before the claims pending in the state court are reduced to judgment, the purchaser will acquire all the interest of the judgment debtor, but will take the property subject to such judgments as may thereafter be obtained on the pending liens. In view of the fact that the amount of the incumbrances on the property cannot be definitely known until the other liens are reduced to judgment, and in view of the peculiar character of the property, it scarcely admits of a doubt that to allow a sale to take place under the judgments of this court, before any of the other liens have been reduced to judgment, and are entitled to participate in the proceeds of the sale, would lead to a very considerable sacrifice of the judgment debtor's interest, unless the judgment debtor becomes the purchaser, which in this case does not seem probable. On the other hand, a very short stay of execution on the judgments rendered in this court will clearly not prejudice the judgment creditor's security, and in the mean time the other lienholders, or the majority of them, will have an opportunity to reduce their claims to judgment, and be in a position entitling them to participate in the proceeds of the sale. It seems to the court desirable that the sale, when it occurs, should be for the benefit of as many lienholders as possible, for the reason before suggested, that it will prevent a sacrifice of the property, and for the further reason, that it will avoid the expense of numerous sales, and the complications of title that might result therefrom. For the reasons indicated, I conclude that the case is not only one in which the court in the exercise of its discretion may order a temporary stay of execution, but that it is a case in which the court is bound to do so for the protection of all interests concerned.

I understand that the state court in which the undetermined lien suits are pending, meets on the first Monday in March, and that most, if not all, of the liens can be reduced to judgment during that month. I shall accordingly order that execution on the judgments pending in this court be stayed until March 10, 1890, which order will have the effect of postponing a sale under the executions until about April 1, 1890, by which time I have no doubt that most, if not all, the unliquidated lien claims will be in a condition to participate in the proceeds of the sale, unless the judgment debtor sees fit to delay the proceedings in the state court. If the proceedings are delayed in the state court by the act of the judgment creditor, it will not be incumbent on this court to grant any further stay of final process for its benefit or protection.