STATE ex rel. NEWELL v. DISTRICT COURT IN AND FOR THIRD DISTRICT et al.

No. 2133.   Decided April 27, 1910 (108 Pac. 1121).

1. RECEIVERS—INSOLVENCY—RECEIVERS—RIGHTS OF ACTION. A receiver of an insolvent corporation is authorized to intervene in an attachment suit against the corporation and file a motion to set aside an order of sale of the attached property. (Page 421.)

2. EXECUTION—INTERVENTION BY THIRD PERSON—REMEDY BY MOTION. The general rule that none but parties to original actions can move the court to recall or quash an execution is subject to an exception in favor of persons not parties who will necessarily be prejudiced by the enforcement of the writ, such as subsequent purchasers, lienholders, and execution or judgment creditors. (Page 422.)

3. RECEIVERS—CLAIMS AGAINST PROPERTY—LEAVE OF COURT TO SUE The court appointing a receiver may, on proper application, grant leave to a person interested in the property in the receiver's hands to segragate it from the general mass and to sell the portion so segregated, and apply the proceeds to the payment of a lien existing in favor of the appellant. (Page 423.)

4. EXECUTION—ORDER OF SALE—RECALL OF EXECUTION. Where the court makes a formal order for the sale of attached property, under Comp. Laws 1907, sec. 1414, providing for sale of property under a special landlord's lien, and section 3080 providing for a sale of attached property after the recovery of judgment, a subsequent order of the court recalling a special execution issued in pursuance of the order is a nullity and does not affect the order of sale, since such order of sale is in the nature of a judgment which cannot be set aside except by formal proceedings recognized by law for that purpose. (Page 425.)

5. CERTIORARI—REVIEW OF VOID ORDER—RECALL OF EXECUTION. Where the court in attachment proceedings makes a formal order of sale, in pursuance of which a special execution is issued, a subsequent order of the court recalling the execution, though void as beyond the power of the court, *certiorari* will lie to annul such subsequent order since the petitioner cannot be required to expose himself and the officer to proceedings for contempt for disregarding the court's order. (Page 427.)

Certiorari by the State, on the relation of Henry Newell, against the District Court for the Third Judicial District, Salt Lake County, and others to review an order of such court setting aside an order of sale in attachment proceedings.

ORDER ANNULLED.

Decided April 27, 1910.

*M. E. Wilson* for plaintiff.

*Lawrence & Robertson, Stephens, Smith & Porter, Dean F. Brayton* and *Allen T. Sanford* for defendants.

FRICK, J.

This proceeding was instituted in this court under its original jurisdiction to obtain a writ of *certiorari,* which was prayed for to enable this court to review a certain order made by the district court of Salt Lake County, by which said court quashed or set aside a previous order entered by said court. The latter order directed the sale of certain personal property held under a writ of attachment issued in favor of the petitioner, and which property was held for the purpose of satisfying a judgment obtained by him in said court.

The facts briefly stated are: That on July 17, 1909, in a certain action then pending in the district court of Salt Lake County, wherein one Copeland was plaintiff and the Salt Lake Public Service Company, a corporation, and others were defendants, one W. B. Albertson was duly appointed receiver of, and took possession and retained possession of, the property and assets of said corporation for the purpose of winding up its affairs; that said corporation, as the tenant of the petitioner, became indebted to him in the sum of $1403.15 for rent; that, under our statute, sections 1407 to 1415, inclusive, Comp. Laws 1907, a lessor has a lien upon the property of the lessee for rent due and unpaid, which lien, under ordinary circumstances, is enforced by the commencement of an action, followed by an attachment by which the property of the lessee is seized and held pending the action and the entry of judgment therein; that on the 12th day of January, 1910, in an action duly commenced and pending in Salt Lake County, and in which an attachment had been duly issued, and certain property attached under the statute referred to, the petitioner, as lessor, obtained a judgment against the receiver of said corporation for the amount above stated; that before the bringing of said action the petitioner applied for and obtained leave from the district court aforesaid to bring the same against the receiver of said corporation, and obtained leave of said court to attach and take possession of certain property belonging to said corporation and in the possession of said receiver by virtue of said writ of attachment which was duly issued in said action; that after said property was surrendered by the receiver and seized under said writ of attachment, and after the judgment as aforesaid was obtained, said court ordered the attached property sold and the proceeds thereof to be applied to the satisfaction of said judgment to the extent of said proceeds; that after said order of sale had issued the defendants in this proceeding filed a motion in said district court to recall and quash said order of sale, or execution, as they call it, which motion was substantially based on the following grounds: That the movants appeared in the original

action in which the receiver was appointed, and by way of cross-complaints there set forth that the defendant Savings & Trust Company, a corporation, had a valid and subsisting lien on all of the property, real and personal, of said Salt Lake Public Service Company by virtue of a trust deed or mortgage, and that the other two defendants had valid and subsisting statutory liens against said property, all of which the petitioner concedes to be true; that all of the property of said company at the time petitioner's action was commenced was in the possession of the receiver of said public service company, and that the same was by him held for the benefit of all the creditors of said company which was insolvent; that said defendants were not parties to nor appeared in the action of said petitioner, and that "it is an abuse of the process of this court to cause execution" to be levied upon the "property which is in the hands of the receiver;" and, further, "that it is unlawful and improper for said sheriff to interfere with the possession of said property." The district court granted the request of the defendants and entered an order recalling or quashing said order of sale or so-called execution. Counsel for petitioner in effect contend that the court was without jurisdiction to make said order (1) because there was no proper proceeding commenced or pending in which said court was authorized to act; (2) because the court was powerless to grant said motion for the reason that the movants had neither the right nor legal authority to make the motion or to obtain the relief sought by them in the manner and by the proceeding before stated; and (3) because the court in any event was without authority to recall said order of sale, and hence the order quashing the so-called execution is void.

It is fundamental that "every court has power to watch over the execution of its judgments," and thus has the power to recall or quash an execution or order of sale that has been improvidently or irregularly issued. (*Rhodes v. Smith,* 66 Ala. 179; *Mattocks v. Judson,* 9 Vt. 343.) All courts have power to "revoke, correct, restrain, or quash their own process, in the course of their ordi-

nary jurisdiction." (*Robinson v. Yon*, 8 Fla. 355; *Eaton v. Cleveland, St. L. & K. C. Ry. Co.* [C. C.], 41 Fed. 422.) The contention, therefore, that the court was without jurisdiction generally cannot be sustained.

Nor is the contention sound that the defendants had no legal right or authority to invoke the aid of the court by motion; nor that the court had no authority to pass upon the question upon a mere motion. While, no doubt, it is the general rule that none but parties to the original or principal action who are liable to be injured can complain, and thus move the court to recall or quash an execution, yet there is an exception to this rule which is as well recognized as is the rule itself. Mr. Freeman, in his excellent work on Executions, in referring to the general rule, says: "To this rule an exception probably exists in favor of persons who, though not parties to the action, must necessarily be prejudiced by the enforcement of the writ, such as subsequent purchasers, lienholders, and execution or judgment creditors." (1 Freeman on Executions [3d Ed.], sec. 75.) That filing and serving a motion on the adverse party is the proper method of making the application, if made to the court in which the judgment is rendered, or out of which the execution is issued, whether the application be by a party to the action or by one affected as aforesaid, is also well settled, as appears from section 73 *et seq.*, of the volume just cited. The doctrine, as stated by Mr. Freeman, is supported by the following authorities: *Canan v. Carryell*, 1 N. J. Law, 3; *Fox v. Union Turnpike Co.*, 37 Misc. Rep. 308, 75 N. Y. Supp. 464; *Harrington v. O'Reilly*, 9 Smedes & M. (Miss.) 216, 48 Am. Dec. 704; *Jaffray v. Saussman*, 52 Hun, 561, 5 N. Y. Supp. 629.

The only case found which is directly to the contrary is *Wallop v. Scarburgh*, 5 Grat. (Va.) 1. There are, however some other cases which are sometimes referred to as being in harmony with the Virginia case. Some of those cases, like those from Georgia, are, however, based upon special local statutes, and hence have no special bearing upon the question, while in others, of which *Hanika's Estate*, 138 Pa. St.

330, 22 Atl. 90, 21 Am. St. Rep. 907, is a type, the holding is really based on the question that the party who applied to set aside the execution was not prejudiced, and hence his application was denied. Under the great weight of authority we think it must be conceded that the defendants had sufficient interest in the property to entitle them to invoke the aid of the court in the premises, and that their application, by motion was proper.

The real difficulty in this case, however, arises when we come to consider its real status. It is true, as counsel for the defendants contend, that the well-established rule is that property in the hands of a receiver is in the custody of the court appointing him, and cannot, without special leave of said court, legally be meddled with by any person, with or without process. It is, however, equally true that the court may, upon proper application, grant leave to a person who is interested in the property which is in the receiver's hands to segregate it from the general mass and to sell it, or a part of it, and to apply the proceeds thereof to the payment of an existing lien, or to take it and dispose of it as the court may direct. That this is the law is well established by the authorities. In *Dugger v. Collins,* the Supreme Court of Alabama, in discussing this question in 69 Ala., at page 330, approves and adopts the language of Mr. High, as the same is found in section 141 of that author's work on Receivers, as follows:

"So extremely jealous are courts of equity of any interference *pendente lite* with the possession of their receivers, that they will not ordinarily permit property which is the subject of a receivership to be sold on execution. . . . The proper remedy for a judgment creditor who desires to question the receiver's right to the property is to apply to the court appointing him to have the property released from the receiver's custody in order that he may proceed against it under his judgment."

In 2 Story, Eq. Jur., sec. 833a, the same thought is expressed. To the same effect is *Stanton v. Heard,* 100 Ala. 515, 14 South. 359. The rule is also tersely stated in 34 Cyc. 235, and is fully discussed in the same volume at page

411 *et seq.*	The undisputed facts show that the petitioner strictly complied with the law and the orders of the court having jurisdiction over both the receiver and the property. Leave of court was obtained not only for the purpose of bringing an action against the receiver, but leave was also asked for and granted to the petitioner to seize particularly described property from the possession of the receiver, and segregate it from the general mass of property in his hands under his appointment.	All this was done under the writ of attachment authorized by the court in the action against the receiver and was permitted for the express purpose of satisfying the petitioner's statutory landlord's lien.	The property seized under the writ of attachment issued as aforesaid was thus placed into the custody of the officer who acted for and represented the petitioner, and was held by said officer during the pendency of the petitioner's action and until his claim should be merged into a judgment, which, as we have seen, was entered on the 12th day of January, 1910. Counsel for defendants concede that the property was seized by and with the consent of the court, but they contend that it was not surrendered by the court except for the special purpose of permitting the petitioner to perfect or establish his landlord's lien.	We are unable to assent to this view. In view that the receiver had been appointed and had possessed himself of the property, and had thus, in legal effect, placed it into the custody of the court, the court, no doubt, could have made the statutory lien of the petitioner effective without the formality of a special attachment proceeding.	In an ordinary case the purpose of such proceeding no doubt is to bring the property into the custody of the law by seizing it under a writ of attachment, but, since the property in question was already within such custody, we can see no good reason for permitting the seizure in this instance except to have the receiver surrender the property for the benefit of the petitioner in view of his landlord's lien.	The orders of the court in that regard still stand unaffected, and as long as they remain in full force and effect we cannot see how the court had any power or authority to interfere

with the petitioner in carrying into effect the prior subsisting and undisturbed orders of the court.

Nor is the suggestion that the court, in quashing the so-called execution, recalled what it had authorized before of controlling force. The order of the court, authorizing the petitioner to seize the property in question, was in the nature of an adjudication that the facts and circumstances, set forth by him in his application for leave to sue the receiver and to seize said property, rendered it proper for the court to order said property turned over to the petitioner for the purpose of satisfying his lien. The exact time when the court made the foregoing adjudication as evidenced by the order to seize the property the record does not disclose, but it does show that it must have been made some time before the 30th day of July, 1909, as on that date the attachment was issued which was based on the order of the court by which the property was surrendered and taken for the benefit of the petitioner. The matter then remained in abeyance until January 12, 1910, when the judgment in favor of petitioner was entered. In that judgment the property released by the court and taken by the officer for the petitioner is particularly described, and in the judgment it is provided that it is "further ordered, adjudged, and decreed that the property above described be sold to satisfy the amount of said lien," namely, the petitioner's landlord's lien. In the motion of the defendants, neither the original order by which the property was by the court ordered released, nor the judgment in which said order is, by implication at least, approved and the property ordered to be sold, is assailed. All that is attacked and asked to be quashed is a subsequent order of sale which defendants call an execution. While it may be conceded that, if this were merely an ordinary case of attachment followed by a judgment, the court might have possessed the power to suspend the sale of the attached property at any time before sale on the motion of any one having a lien on or interested in the property, yet this is not such a case. In this case the property, in contemplation of law, was not taken by virtue of an

attachment, but it was taken, and could only have been legally taken, by virtue of the court's order authorizing it. That order, as we have seen, is not questioned by any one, but remains in full force and effect. Nor is the judgment in which the property was ordered sold to satisfy petitioner's lien attacked or questioned by any one. If it be conceded, therefore, that when defendants' motion was made to set aside the so-called execution, the motion was made in time to authorize the court to modify its judgment, yet the motion was not made for that purpose; nor did the court modify it or attempt to do so in the order it made and which is attacked in this proceeding. This being so, the pretended order of the court to quash the so-called execution was, in legal effect, merely an indirect attempt to modify a prior order and judgment of the court in an unauthorized manner.

It seems to us that whether the order of sale, or so-called execution, be considered in the light of section 3080, Comp. Laws 1907, which provides for the sale of attached property "if judgment be recovered" in an action, or in the light afforded by section 1414, which applies to sales under the special landlord's lien statute, the result must still be the same. In neither section is an order of sale or execution contemplated. Nor, in the absence of an express statute, can we see any good reason for any such order of sale or execution. The usual purpose of such orders or executions is to authorize the officer to seize the property of the execution debtor and to sell it as contemplated by the execution. In attachment proceedings the officer seizes and obtains possession of the property by virtue of the writ of attachment, and the statute, in express terms, authorizes the sale if a judgment is obtained. In such proceedings, therefore, the officer, in selling the attached property after judgment, acts by virtue of the statute, and not by virtue of special process. True, it may be convenient in practice, and may also be convenient for the officers and clerks, to issue a formal order of sale, but what legal efficacy such an order has, or what authority it confers upon the officer in selling attached property that he does not possess without it, in view of our stat-

ute, exceeds our comprehension. In this case the officer in taking the property acted under the direct order of the court by which the property was surrendered to him for the benefit of the petitioner, and in selling it the officer would have acted both by virtue of the statute and by the order contained in the judgment and decree to which we have referred. In granting the motion, therefore, to set aside the so-called execution, the court effected nothing. The court, however, did more than merely to set aside the execution. It ordered the sheriff not to sell the property. In making this order we are of the opinion that the court exceeded its power and authority, and hence the order in that regard is void and of no effect. Although it was beyond the power of the court to make the order, yet the petitioner was not required to expose himself and the officer to proceedings for contempt by disregarding the court's order, but he could do what he has done—institute these proceedings to annul the court's unauthorized act.

In view of all the circumstances, we, after some hesitation, have been forced to the conclusions: (1) That the order made by the court setting aside the so-called execution is without force or effect; (2) that the further order of the court by which it ordered the officer not to sell the property in question was in excess of its power, and hence void and of no effect; and (3) that if the defendants had, or have, any remedy it is not by a motion by which they merely assail the order of sale, but they must, in some proceeding, assail the original order and judgment by which the property was surrendered by the court to the petitioner for the special purpose disclosed by the record and the judgment in which the court specially directed the officer to sell the property. We are of the opinion, therefore, that the pretended order of judgment of the district court quashing said order of sale or so-called execution and restraining the officer from selling said property should be, and it accordingly is hereby, annulled, set aside, and held for naught. The petitioner to recover costs.

STRAUP, C. J., and McCARTY, J., concur.