## MATHEW M. GASSER v. JAMES J. WALL.[1]

June 23, 1911.

Nos. 17,059—(140).

**Former decision followed.**

Former decision in this case, to the effect that the evidence was sufficient to justify the jury in finding that the parties entered into a joint venture for the purchase of certain stock in a mining corporation, the evidence on this trial being substantially the same, followed and applied.

**Evidence of fraud in obtaining written contract.**

Evidence *held* sufficient to justify the conclusion that a certain written contract, expressing the terms of the agreement at variance with the prior parol understanding of the parties, was procured by fraud.

**Parol evidence admissible.**

The parol negotiations, in connection with facts and circumstances tending to show the fraud, *held* properly received in evidence.

After the former appeal, reported in 111 Minn. 6, 126 N. W. 284, the case was tried before Cant, J., and a jury which returned a verdict in favor of plaintiff for $913.62. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*Washburn, Bailey & Mitchell,* for appellant.

*John B. Richards, Jr.,* for respondent.

[1]Reported in 131 N. W. 850.

BROWN, J.

This action was before the court on a former appeal, where a new trial was granted. 111 Minn. 6, 126 N. W. 284. A second trial resulted in a verdict for plaintiff, and defendant appealed from an order denying his alternative motion for judgment or a new trial.

The questions presented on the present appeal differ in some respects from those before us on the former appeal, a proper understanding of which requires a restatement of the case. The jury were justified in finding the following facts:

The law firm of Baldwin, Baldwin & Dancer, of Duluth, owned or controlled ten thousand shares of stock in an incorporated mining company, which they had offered to sell at fifteen cents per share, or a total of $1,500. Defendant learned of the fact that the stock was offered for sale and deemed it a good investment. On Feburary 1, 1907, he laid the matter before plaintiff and solicited him to join in the purchase of the same. He falsely represented to plaintiff that the selling price of the stock was thirty cents a share, or $3,000, when it had been offered to him for $1,500, and defendant then held an option to buy at that figure. After some consideration of the matter plaintiff agreed to join with defendant and make a joint purchase; plaintiff believing from the representations of defendant that each were to pay therefor the sum of $1,500, and each to have a one-half interest in the stock as joint owners. They subsequently proceeded to the office of Baldwin, Baldwin & Dancer for the purpose of completing the transaction. After a short consultation between defendant and a member of the firm, not in the presence of plaintiff, plaintiff was informed that the matter could not be closed that day, that it was necessary that certain papers evidencing the transfer of the stock be made out, and that the matter could be completed on the following day. Plaintiff then returned to his place of business, leaving defendant at the office of the attorneys.

It appears, at least by permissible inference from the facts and circumstances disclosed, that the members of the law firm became aware in some way that defendant intended in his relations with plaintiff to turn a short corner to which they were unwilling to be-

come parties, and this evidently was one of the reasons why the transfer of the stock was not then made.

What occurred between the members of the law firm and defendant after plaintiff returned to his place of business does not fully appear. Among other things, however, it does appear that a member of the firm dictated a letter, addressed to the firm, which defendant presented to plaintiff early the next day for signature. The letter refers to a conversation, and a verbal agreement between a member of the firm and plaintiff and defendant for a sale of the stock to them, and expressly releases the firm from any legal or moral obligation to perform the same. The letter also purports to cancel whatever agreement for the sale of the stock may previously have been made with the firm. This letter defendant presented to plaintiff, with the request that he sign the same and return it to Baldwin, Baldwin & Dancer. Plaintiff hesitated, and inquired the purpose of the letter. He was assured by defendant that its only purpose was to satisfy Mr. Baldwin, who had, defendant thought, some peculiar notions about business transactions, and desired to avoid any subsequent entanglements which might arise. Upon this assurance plaintiff signed the letter, and defendant returned it to Mr. Baldwin.

Thereafter and on the same day defendant again called upon plaintiff and presented to him a written contract, with the request that he sign it. The contract recited that defendant had purchased the stock from C. O. Baldwin, and that the certificate had been properly assigned to defendant, following which was an agreement of sale from defendant to plaintiff of one-half the stock for the consideration of $1,500. The writing contained also provisions for the payment of the purchase price, and for the deposit of the certificate with a third person until so paid.

Plaintiff signed the contract, being induced to do so, as he testified, by the statements previously made by defendant in reference to the letter, and the assurance that the original purpose of a joint purchase was in no way changed. The transfer of the stock was then completed. The certificate of stock was assigned to defendant, and by plaintiff and defendant deposited in escrow as heretofore stated.

Plaintiff subsequently paid the purchase price of $1,500. He later discovered that he had been deceived by defendant, in this, that the total price for the stock was $1,500, instead of $3,000, as represented by defendant, and he brought this action to recover damages for the fraud.

It was held on the former appeal that the evidence justified the jury in finding that the parties were engaged in a joint enterprise, each owing to the other perfect good faith, and that, for the deception practised upon plaintiff by defendant, plaintiff could recover one-half the amount paid by him for the stock. The evidence is now practically the same, and we follow our former decision, and come directly to the question not then presented.

The evidence offered by plaintiff was amply sufficient to establish the fact that the parties entered into a joint venture for the purpose of investing in the stock, each to pay an equal amount, and on the theory that $3,000 was the price to be paid. It also clearly and indisputably shows that defendant falsely and fraudulently deceived plaintiff from the beginning of their negotiations in respect to the price of the stock. Defendant had previously bargained therefor, and had agreed to pay the sum of $1,500, and he falsely stated the price to plaintiff as $3,000. After the parties had so agreed to buy the stock, defendant caused to be prepared, in the absence of plaintiff, the letter to the law firm releasing the members thereof from any obligations to transfer the stock to plaintiff and defendant, as previously agreed upon, and the written contract reciting a sale to defendant by Baldwin, and by defendant to plaintiff. Upon the appearance of this contract in evidence, counsel for defendant objected to any evidence of the prior parol negotiations, and moved to strike out all that had already been admitted, on the ground that it was incompetent and tended to vary and contradict the terms of the written contract. The objections were overruled, and the contention that this was error presents the principal question on this appeal.

It is well settled that persons united for a common, though limited, purpose must be loyal to that purpose and to each other. None may by independent effort concerning the objects of the enterprise

or venture secure to himself an unfair advantage over those interested with him. All profits secured or obtained by either inure to the benefit of all, and false representations of the price paid for property subject the one making them to liability to his associates. 23 Cyc. 455; Church v. Odell, 100 Minn. 98, 110 N. W. 346; Rhind v. Hambleton, 84 Md. 456, 36 Atl. 597, 40 L.R.A. 216, and note; Yale v. Wilcox, 64 Conn. 101, 29 Atl. 303, 25 L.R.A. 90, 42 Am. St. 159; Seehorn v. Hall, 130 Mo. 257, 32 S. W. 643, 51 Am. St. 562.

There can be no question in the case at bar, from the standpoint of plaintiff's testimony, the truthfulness of which the jury by their verdict affirmed, that up to the point of signing the written contract the parties were jointly concerned in the purchase of the stock, and that defendant owed to plaintiff perfect good faith and fair dealing. Nor can there be any serious question, after verdict, that in procuring plaintiff to join in the purchase defendant's purpose was one of fraud and deception from the outset, and the jury were justified in finding that this purpose continued throughout the transaction, including the procurement of plaintiff's signature to the letter to Baldwin, and the written contract, both of which were prepared at the instigation of defendant, without consultation with and in the absence of plaintiff. The purpose claimed for these documents was to satisfy the alleged peculiar notions of Mr. Baldwin, and to avoid involving his firm in subsequent entanglements. That claim presented a question of fact for the jury. For the purpose of disclosing the alleged fraud, all the evidence objected to by defendant was admissible. No particular order of proof is necessary in actions of this kind. It often requires a full disclosure of all the negotiations of the parties to uncover deception, and we are satisfied that no error was committed below in this instance. The evidence was properly received, and is sufficient to justify the conclusion that the act of defendant in procuring plaintiff to sign the written contract was a continuation of the original fraud, and an attempt to guard against the consequences thereof.

While it is true that the trial court did not specifically charge the jury upon the question of fraud, no exception was taken on the

trial, nor was the court requested to more fully, or otherwise, instruct upon that phase of the case. Defendant cannot now complain. Bailey v. Grand Forks Lumber Co. 107 Minn. 192, 119 N. W. 786; Beardmore v. Barton, 108 Minn. 28, 121 N. W. 228.

This covers all questions requiring special mention.

Order affirmed.