# Lyons *v.* Webster, *et al.*

### Specific Performance.

(Decided November 23, 1916. Rehearing denied December 30, 1916. 73 South. 337.)

1. **Corporations; Consolidation; Promoters.**—Where stockholders in two breweries, for the purpose of consolidation, organized a third brewing corporation, and some of them agreed to accept a certain number of shares of stock in the consolidated corporation in exchange for their shares in the original corporation, but the promoters of the new corporation secured a greater number of shares than the others had agreed to accept, and retained the excess, their action was a legal fraud upon the new corporation, as their relation to the new corporation was of a fiduciary character, and called for the utmost candor.

2. **Same; Estoppel.**—In such a case, where the new corporation upon discovering the fraud demanded a return of the excess shares, the promoter, in an action by the old corporation stockholders, was not estopped to show the better title of the new corporation.

3. **Same; Unauthorized Acts; Fraud; Rescission; Duty to Return Property.**—Notwithstanding there can be no rescission of a contract without restoration of all the property received thereunder, such doctrine does not apply where the promoters of a corporation practiced a legal fraud, and secured a greater number of shares than they were entitled to, and the corporation then demanded return and cancellation of such additional shares.

4. **Same; Stockholders; Remedy.**—In such a case, the corporation being entitled to the dividends paid, the stockholders could not object, in their action for return and apportionment of the stock, to a settlement for a smaller amount than the dividends actually represented, but should have pursued their remedy through the corporation.

[Lyons v. Webster, et al.]

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Joseph M. Lyons against Joseph D. Webster and others, for specific performance, in which certain of the respondents filed a cross bill. From a judgment dismissing the bill and the cross bill, both complainant and cross complainant appeals. Affirmed.

GREGORY L. SMITH, and HARRY T. SMITH & CAFFEY, for appellant. STEVENS, McCORVEY & McLEOD, and ERVIN & McALEER, for appellee.

SAYRE, J.—Prior to August, 1902, the parties to this suit constituted all the stockholders of the Bienville Brewery, an Alabama corporation having its place of business in Mobile. The Mobile Brewery, an Alabama corporation, was also engaged in business at Mobile. At that time a "beer war" was being waged in Mobile, in which foreign breweries and the two domestic corporations named above were engaged. This "war" gave rise to the idea that the two domestic corporations might be advantageously consolidated, and in November of that year this idea was put into effect by a transfer of all the stock of the local corporations to the Mobile Brewery of New Jersey, a corporation which had been formed under the laws of the state of New Jersey for the specific and sole purpose of taking over the stock and business of the two Alabama corporations. Louis P. Hart and Albert S. Lyons were interested, as stockholders at least, in both the local corporations, and took an active part in bringing about the consolidation. They made representations to a conference of all the stockholders of the Bienville Brewery with such effect that all of them agreed among themselves to an exchange of stocks to be effected by means and on terms which we will exhibit by copying the agreement between the defendant Webster and Joseph H. Lyons, to whom we shall hereafter refer as complainant, which said agreement was reduced to writing as follows: "Whereas, it is proposed to form a corporation in New Jersey to be called 'Mobile Brewery'; and, whereas, it is the purpose of the said corporation to buy all of the property and assets of the Mobile Brewery, an Alabama corporation, and of Bienville Brewery, an Alabama corporation; and, whereas, the undersigned Jos. H. Lyons is a stockholder in the Bienville Brewery, owning 50 shares of the stock thereof:

[Lyons v. Webster, et al.]

"Now therefore, the undersigned Jos. H. Lyons does hereby agree to accept 85.78½ shares of the capital stock of said New Jersey corporation to be formed as aforesaid, in full satisfaction for, and exchange of, his said 50 shares of stock in Bienville Brewery.

"To enforce the performance of the foregoing agreement, the undersigned Jos. H. Lyons does hereby deposit with the undersigned J. B. Webster, as trustee, a certificate for said 50 shares of stock in Bienville Brewery, and does hereby instruct the said Webster as such trustee, to do all things necessary to effect the exchange of stock contemplated hereby. The said Webster as trustee as aforesaid, accepts the said trust and agrees to perform the same to the best of his ability. He further agrees to return the said certificate of stock to the undersigned Jos. H. Lyons in the event that the carrying through of the said exchange of stock should fail from any cause.

"In testimony whereof, the said Jos. H. Lyons and the said J. B. Webster, as trustee, have hereunto set their hands in duplicate, this —— day of August, 1902.

"Joseph H. Lyons.

"J. B. Webster, Trustee."

The aggregate effect of these agreements was to provide for the transfer through Webster of all the stock of the Bienville Brewery to the Mobile Brewery of New Jersey in exchange for 1,250 shares of stock in the last-named corporation to be issued to Webster and distributed by him among the stockholders of the Bienville Brewery in the proportions to which they had agreed. Hart and Lyons (Albert S.) afterwards made representations to the directorate of the Mobile Brewery of New Jersey, of which they were members, in regard to the value of the Bienville Brewery stock of such purport and with such effect that the New Jersey corporation determined to give 1,500 shares of its stock for all the stock of the Bienville Brewery. These resolutions of the respective parties, by which we mean the stockholders of the Bienville Brewery on one hand and the directors of the Mobile Brewery of New Jersey on the other, were executed by the issuance to Webster of certificates for 1,500 shares of stock in the New Jersey corporation of which he distributed 1,250 according to the agreement among the Bienville stockholders including himself, Hart, and Lyons; the remaining 250 shares he divided out between Hart, Lyons, and himself. Nobody but Hart,

[Lyons v. Webster, et al.]

Lyons, and Webster was aware that there was a discrepancy between the understandings of the parties (other than Hart, Lyons, and Webster) to the transaction, or that the parties named had acquired an overplus of 250 shares for more than 10 years, after which, the facts coming then to light, complainant filed this bill to compel the defendant Webster to account to him for the 250 shares in proportion to his ownership of shares in the Bienville company and the dividends that had been paid on them in the meantime; his theory of the case being that Webster, when receiving said 250 shares, had acted as agent and trustee for him and the other stockholders and had estopped himself to deny their beneficial ownership of the same. Some of the original parties defendant have filed cross-bills against Webster for like relief. Defendant Webster, confessing for himself that the operations by which he, Hart, and Lyons got possession of the 250 shares amounted to a fraud, insists that he should not be charged on complainant's bill, for that he and Lyons by way of reparation have surrendered to the Mobile Brewery of New Jersey 250 shares of its stock and have accounted to it for dividends paid to Hart and themselves in the meantime, thus yielding the stock and dividends claimed by complainant to the prior right and claim of an outstanding paramount title.

More in detail we state and consider the contentions between the parties as follows:

Complainant insists, defendant's convenient confessions to the contrary notwithstanding, that there was no fraud in the representations as to the value of the Bienville stock made by Hart and Lyons to the New Jersey corporation, that they were merely "puffing" the Bienville stock owned by themselves and the other stockholders in that company, as they had a right to do, and hence that they did the New Jersey corporation no wrong in getting 250 shares of its stock more than the Bienville stockholders had agreed among themselves to take. It is probable that defendant Webster was a party to the scheme in its inception. At any rate, his co-operation was necessary to its success, and he became a party in time to make it effective. We can see no reason to doubt that when receiving and distributing the 1,500 shares he was fully informed of the entire meaning of the transaction, and, apart from his admissions, it is very well shown by the evidence that he knew of the relations of Hart and Lyons with the other parties to the proposed exchange of stock, and that

they, taking advantage of their position, had contrived to get the 250 shares concerning which this controversy has arisen, not openly and in due proportion for themselves and the other stockholders who furnished their share of the consideration they were offering, and in whose interest, as well as their own, they pretended and appeared to be acting, but with the undisclosed intent that these shares should be converted to their own exclusive use and benefit. The plan and method through which defendant obtained these 250 shares, we are constrained to say, operated as a legal wrong committed against all the interests involved— obviously enough and immediately a wrong against the Mobile Brewery of New Jersey, and also a wrong against complainant and individual stockholders in like case with him, but this last a wrong by indirection and for the reason only that it affected their ratio of ownership in the proposed corporation.

(1) The plan by which defendant Webster and his confederates acquired the shares of stock in question was a legal fraud upon the Mobile Brewery of New Jersey, because Hart and Lyons were promoters of that corporation, and this plan was conceived and executed without the knowledge of the other parties in interest. Their relation to the corporation was of a fiduciary character, calling for the utmost candor in all dealings between them. Bargaining for the proposed exchange of stock, these promoters, who were also directors of the New Jersey corporation, a mere holding corporation then in its formative stage, represented as well the stockholders of both the proposed constituent corporations. These two bodies of stockholders had, of course, a common interest in the consolidated corporation then in process of formation; but there was also a certain antagonism between them, since every share of stock acquired by either in the operation reduced the other's ratio of ownership. Hart and Lyons were interested in both the proposed constituent corporations, and as promoters of the proposed consolidation they represented all other stockholders in both. Their position was one of trust and peculiar delicacy, demanding of them the utmost circumspection in all they did. In this situation, they could not fail to disclose every fact that might have influenced the pending issue of stock to Webster for themselves and the other Bienville stockholders, as that all the Bienville stockholders had entered into an agreement which contemplated the exchange of all holdings for 1,250 shares of the New Jersey stock, and that the 250 shares

over for which they were asking, at the expense most obviously of their fellows in the Bienville Brewery, and ultimately, of course, at the cost of all other stockholders in the consolidated corporation, were intended for their own individual use and benefit. It was their duty to make full disclosure of these considerations. Their failure to do so—though at the time they overlooked, it seems, their position as promoters and considered that their plan consisted with the ordinary morality of business transactions—must in a court of equity be held for an inexcusable neglect of a duty owed to everybody concerned, in short, a fraud in law.—*Moore v. Warrior Coal & Land Co.*, 178 Ala. 234, 59 South. 219, Ann. Cas. 1915B, 173.

(2) We do not concur in appellant's proposition that defendant, answering the claims made against him in the original and cross-bills in this cause, is estopped to show that the Mobile Brewery of New Jersey, to which he has accounted for the 250 shares in question, had the better title, because, as complainant (appellant) asserts in effect, in making that showing he must needs deny the title of his principal or cestui que trust and prove that his title and possession were acquired through fraud. It is plain that defendant and those with whom he confederated, whether at an early or late stage of the game makes no difference, made use of their relations with the other parties in interest—defendant not less than the rest, though in a partially different area of action—to get the shares in question, and it is not necessary to deny that, in the absence of any fraud upon the Mobile Brewery of New Jersey, that is to say, if there had been no suppression of facts that corporation was entitled to know by reason of its confidential relation with Hart and Lyons, it is not necessary in that case to deny that defendant might be held to account directly to complainant and the other Bienville stockholders. But complainant is claiming the benefit of 250 shares of stock which the Mobile Brewery of New Jersey was fraudulently induced to issue. If defendant was not a conscious party to the fraud—and complainant insists there is no evidence that he was—then certainly there is no rule of estoppel, estoppel being a personal matter, that would deny him the right to prove the wrong done by Hart and Lyons (who alone made representations to the New Jersey directorate) in order to show the outstanding paramount right and title of the New Jersey corporation, to which he has made reparation. An agent or trustee may relieve himself of accountability to his principal or cestui

que trust, even in respect of the corpus of the property of which he has received possession or title from his principal or cestui que trust, by showing that he has accounted to a better title. If, on the other hand, this defendant was a conscious party to the fraud practiced upon the Mobile Brewery of New Jersey, the more reason why he acquired no right or title as against it and at the same time reason enough why complainant, who has no claim except through defendant and his fraud, should not be allowed to hold defendant to account, not indeed for complainant's property or any increment thereof, but for property acquired by defendant from another by a fraudulent use of the mere fact of his agency.

(3) Complainant contends further that defendant's accounting to the New Jersey corporation should be held for nothing for the reason that there can be no rescission without a restoration of all the party rescinding has received under the contract, and the New Jersey corporation had no right to take back the 250 shares in question without restoring the 1,250 shares it received from defendant. In view of what we have said in the next preceding paragraph, this contention needs only to be considered in connection with the hypothesis that defendant was a wholly innocent party to the operation by which the Mobile Brewery of New Jersey was induced to part with the title to the 250 shares of stock in question, and no prolonged statement is necessary even in that case, for the mind instinctively reaches the conclusion that there can be no merit in it. The doctrine of rescission is inapt to the transaction between the New Jersey company and the Bienville stockholders. The Mobile Brewery of New Jersey, in making its demand upon defendant for reparation, did not, as to the shares in question, exercise any right of rescission. What it demanded was that these shares be surrendered up for cancellation as obtained by fraud, while in respect to the other shares the transaction would by the cancellation demanded be established on the precise basis upon which complainant and the other Bienville stockholders, the real parties in interest, intended to contract. As for the return of dividends, that was only the return of money obtained by fraud. Both the cancellation of the stock and the return of the dividends inured to the benefit of complainant and all other stockholders in the Mobile Brewery of New Jersey. Defendant and Lyons delivered up 250 shares of stock for cancellation. It was of no moment whether they delivered up the particular shares they had obtained by fraud or other equivalent

[Lyons v. Webster, et al.]

shares which they rightfully owned. The effect upon the corporation and its stockholders was exactly the same; a correct ratio of ownership was established among the rightful stockholders.

(4) As to dividends paid on the stock in question, it hardly seems necessary to argue that the corporation did not need to surrender anything in order to recover them, and if, as complainant seems to assert, the directors of the Mobile Brewery of New Jersey, when compromising the claim of their corporation against Hart (then insolvent), Lyons, and defendant, exceeded their authority or did wrong in giving an acquittance in full on the restitution of less than the amount of dividends paid on account of the shares in question, complainant and the other objecting stockholders should for that wrong have sought relief first through the agency of their corporation. Any other disposition of this objection to the validity of the compromise would require that the Mobile Brewery of New Jersey, in order to right a wrong done first to itself and ultimately to its stockholders, should do a thing which would destroy itself as for any relation it bore to its stockholders who came from the Bienville Brewery; for, being a holding corporation only, it could not return the 1,250 shares of Bienville stock without resolving itself into the Mobile Brewery of Alabama, without destroying itself as a consolidation of two entities, without destroying the value of the stock on account of which complainant seeks relief. These considerations illustrate the impossibility of giving the doctrine of rescission and its consequent of restoration in toto application to the circumstances of the transaction through which defendant acquired the shares of stock in question. The fact is—and on this branch of the case it might have been sufficient to say this in the beginning—the New Jersey corporation received nothing whatever for the 250 shares of stock in question; nor did Hart, Lyons, and defendant pretend to give anything for them save only their services as promoters; but this charge for promotion was made and collected without the knowledge of any one else that the 250 shares were being used for that purpose.

This disposes of the several objections taken against the chancellor's decree dismissing complainant's bill. The decree will be affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and GARDNER, JJ., concur.