AMERICAN BARLEY COMPANY v. W. H. L. McCOURTIE, S. J.
BOAL, H. L. CLANCY, F. N. JOHNSON, P. J. CLANCY,
AND JOHN M. LYNCH.[1]

December 9, 1921.

No. 22,568.

**Corporation — liability of promoters to other stockholders.**

Promoters of a contemplated corporation secured contracts whereby
all the stockholders of an existing corporation, owning and operating
a cereal mill, agreed to exchange the shares of stock owned by them for
an equal number of shares of the capital stock in the corporation to
be formed. It is *held* that those who so contracted, and to whom, in
pursuance of such contracts, shares of capital stock in the new corpora-
tion were issued, do not stand in the position of stockholders subsequent
to the incorporation, but they had an interest in the corporation pro-
moted from the time the contracts were made, so that the promoters
stood to them in a fiduciary capacity and could not secretly and without
consideration issue capital stock for their own use.

Action in the district court for Hennepin county to obtain the sur-
render of capital stock of plaintiff corporation of the par value of $300,-
000 and to recover $288,300. From an order, Molyneaux, J., sustain-
ing defendant McCourtie's demurrer to the first cause of action in the
second amended complaint, plaintiff appealed. Reversed.

*Johnson, Palmer & Watson* and *Thompson, Hessian & Fletcher,* for
appellant.

*M. H. Boutelle,* for respondent.

HOLT, J.

A demurrer by defendant McCourtie to plaintiff's first cause of ac-
tion was sustained, and it appeals.

The substance of the allegations are these: That defendants S. J

[1]Reported in 185 N. W. 506.

Boal and H. L. Clancy were the original promoters of the plaintiff and that McCourtie joined them shortly after its organization, assented to and contrived with them in all they did from the beginning down to the present time; that said three defendants were partners in the entire transaction of the promotion and organization of plaintiff and were in complete control thereof, using the other defendants merely as straw men in carrying out the plans of the said three partner defendants; that McCourtie was not to be a stockholder or officer of plaintiff, but was the general manager; that the three mentioned partner defendants concealed the fraudulent transactions hereinafter mentioned from the remaining stockholders and parties in interest; that about February 1, 1914, the partner defendants conceived the plan of organizing plaintiff, ostensibly for enumerated lawful purposes, particularly the manufacture of barley products, but that the true purpose of the partner defendants was to cheat the real parties in interest and the subsequent stockholders and to enrich themselves; that in May, 1914, plaintiff was organized under the laws of South Dakota with a capital stock of $500,000, which in 1916 was increased to $2,-000,000. It is then alleged that, prior to the incorporation of plaintiff, another South Dakota corporation, named F. N. Johnson Barley Flour Company, hereinafter referred to as the flour company, was operating a barley cereal mill at Carver, Minnesota, owning the mill and equipment, and the defendant F. N. Johnson owned the secret formulae under which the cereal was manufactured; that under the scheme defendant partners, on or about February 1, 1914, obtained, for the purpose of purchase by plaintiff, temporary control for a period of three months of the properties and good will of the flour company and of the Johnson formulae; that such control was obtained separately from Johnson under an option agreement to purchase, and the partner defendants agreed to and with the flour company's stockholders that they would pay to each a one-half share of preferred and a one-half share of common stock in plaintiff corporation to be formed for each share held by such stockholder in the flour company; that since said time up to the present the said flour company stockholders have continued to

be parties in interest in plaintiff, but did not discover the fraud of the partner defendants until just before the commencement of this action; that, at the time the partner defendants obtained the control of the property above mentioned, they agreed with defendant Johnson to issue $15,000 of the preferred stock of the plaintiff company to be formed and $35,000 of its common stock for his interest in the property mentioned; that such agreement was separate from the one with the flour company stockholders, and was not with their knowledge or consent; that said formulae were of no value; that thereafter on June 2, 1914, the partner defendant caused $15,000 capital stock of plaintiff to be issued to the stockholders of the flour company, in accordance with the agreement made prior to its organization, and $300,000 to said Johnson; that Johnson was merely to hold said stock for the partner defendants; that said partner defendants were the real owners of the stock so fraudulently obtained without consideration, and have since from time to time required F. N. Johnson to deliver the certificates thereof in blank, which have been by them transferred to innocent parties and the moneys derived from such sales have been appropriated by them so that rescission is now of no avail. There are many reiterations of fraud and other allegations that do not add anything of substance to the cause of action attempted to be stated.

Respondent relies on Hoffman Motor Truck Co. v. Erickson, 124 Minn. 279, 144 N. W. 952; Old Dominion Copper Co. v. Lewisohn, 210 U. S. 206, 28 Sup. Ct. 634, 52 L. ed. 1025; Insurance Press v. Montauk Fire Detecting Wire Co. 103 App. Div. 472, 93 N. Y. Supp. 134; Seymour v. Spring F. C. Assn. 144 N. Y. 333, 39 N. E. 365, 26 L.R.A. 859.

It is, however, to be noted that in all the cases cited by respondent the promoters owned all the property turned over to the corporation and received all the shares issued at the time of the organization. When that was done the stockholders owned property of the same value as formerly, no matter what the face value of the stock was. Those who subsequently became stockholders could not be legally injured, if the property exchanged by the promoters for capital stock issued to them

had been overvalued. But, under the allegations here, the flour company stockholders did not occupy the position of subsequent stockholders to the promoters, including McCourtie. They, as well as Johnson, were interested in plaintiff before its organization. Its organization was brought about through the contracts under which both such stockholders and Johnson were to turn over certain property and receive stock issued. No other capital stock was to be issued, except in the ordinary way by a sale thereof and payment into the treasury of the price. Then it is alleged that $300,000 were issued, ostensibly to Johnson for the secret formulae, but in reality for the benefit of the partner defendants. This was $250,000 more than was agreed should be issued to Johnson for his secret formulae when the flour company stockholders made their agreement. It is not necessary to consider now the allegations that the secret formulae were of no value.

It is plain that such issue of stock to Johnson for the benefit of the partner defendants was without consideration and fraudulent in law, if the allegations are true that it was done without the knowledge of the flour company stockholders who then already had an interest in plaintiff. This unwarranted issue of $250,000 par value of the capital stock above what the bargain was with Johnson, when the agreement with the flour company stockholders was made, necessarily depreciated the value of the stock in plaintiff that they were entitled to receive. The net result is that a profit went to the partner defendants at the expense of the flour company stockholders. We think the observations made in Davis v. Las Ovas Co. 227 U. S. 80, 33 Sup. Ct. 197, 57 L. ed. 426, as to the difference between that case and the one of Old Dominion Copper Co. v. Lewisohn, supra, are somewhat applicable here. It seems to us the partner defendants, as promoters of plaintiff, stood in a fiduciary relation to those who had become interested in its organization under the agreement with the flour company stockholders, so that, when it did take place, they could not cause to be issued stock without consideration and for their own benefit that necessarily depreciated the stock that was to go and did go to the flour company stockholders. The situation of the partner defendants here is somewhat similar to that of the parties in Lyons v. Webster, 197 Ala. 654, 73

South. 337, where they voluntarily surrendered the stock obtained without consideration, but where one of the promoters thereafter attempted to saddle his loss on that score upon one of the others. The court there characterizes the relation of promoters towards those who have contracted to become stockholders in the contemplated corporation as fiduciary, so that no secret profits can be made by them.

We think the demurrer should have been overruled.

Order reversed.