HARRY E. GRAFFAM AND OTHERS v. GEORGE E. LYNOTT.[1]

March 11, 1927.

No. 25,874.

**Evidence of joint venture admissible.**

1. Evidence tending to show that plaintiffs and defendant were engaged in a joint venture in the purchase of certain lots was properly received. It did not contradict or vary the terms of the contract under which plaintiffs acquired an interest in the lots. It warranted the jury in finding that the parties were engaged in a joint venture and that defendant had obtained profits which he claimed as his own.

**Difference in values represented profit to be shared with plaintiffs.**

2. The defendant made the initial payment for the lots by the transfer of property, which the jury found to be worth less than the initial payment. The difference between the payment and the value of the property represented a profit to the defendant in which the plaintiffs had a right to share.

**Recovery by plaintiffs not defeated by transfer to the corporation.**

3. The fact that the parties became copromoters of a corporation and stood in a fiduciary relation to the corporation and to those who subscribed for its stock and that the lots were transferred to the corporation does not defeat a recovery by the plaintiffs of the profits the defendant realized if, as the jury must have found, the parties were engaged in a joint venture from the beginning.

Evidence, 22 C. J. p. 1185 n. 90.
Joint Adventures, 33 C. J. p. 861 n. 48, 54; p. 871 n. 20, 21.

See note in 50 L. R. A. (N. S.) 1046; 15 R. C. L. 502; 3 R. C. L. Supp. 462; 4 R. C. L. Supp. 998; 5 R. C. L. Supp. 841.

Defendant appealed from a judgment of the district court for St. Louis county, Magney, J. Affirmed.

*McClearn & Gilbertson,* for appellant.
*Courtney & Courtney,* for respondents.

[1]Reported in 212 N. W. 937.

Lees, C.

This is an appeal from a judgment in favor of plaintiffs. Some of the facts appear in Sorenson v. Greysolon Co. supra, page 259. A recovery was sought in the case at bar on the theory that plaintiffs and defendant had agreed that defendant should purchase certain lots in Duluth at a price and on terms as favorable as possible; that plaintiffs should furnish a portion of the purchase price and have an interest in the lots; that defendant had made a contract with the agents of the owner of the lots for the purchase thereof at a price of $48,500; that he falsely represented that he had made an initial payment of $9,500 and, in reliance upon the representation, plaintiffs paid him $6,000; that he had transferred two lots in Duluth, 200 acres of land in Michigan, and 18½ lots near a lake in that state to the owner of the lots and obtained a credit of $9,500 therefor, although the property transferred was worth much less, and had thus gained a secret profit of more than the $6,000 the plaintiffs had paid him.

The answer admitted the procurement of the contract, alleged that it ran to defendant alone; that plaintiffs desired to share in the anticipated profits of a resale of the lots and with others had organized the Greysolon Company to take over and sell the lots; that the lots were transferred to the company for a consideration of $55,000, plaintiffs receiving stock in proportion to their several interests in the lots; that defendant had not been guilty of any misrepresentations and had no agreement with plaintiffs for the purchase of the lots until after he bought them, when he informed them of the purchase and offered to sell the interests in the lots, which they later acquired under a written contract with him.

The contract referred to is dated August 9, 1922, recites that defendant had a contract for the purchase of the lots and that plaintiffs wished to secure undivided interests therein. It provides that they and two other persons should have interests in proportion to the amounts they had contributed, as set forth in the contract.

It was shown at the trial that the initial payment of $9,500 was made by the transfer by defendant to the owner of the lots of the

property hereinbefore mentioned and that no part of it was made in money. Evidence was introduced tending to show that plaintiffs and defendant agreed to embark in the project before defendant purchased the lots; that when he obtained the contract for their purchase he represented that he had made the initial payment in cash, and obtained $6,000 from plaintiffs ostensibly to partially reimburse him; and that the value of the property he transferred to make the initial payment was much less than $9,500.

The court instructed the jury to determine whether defendant purchased the lots for himself alone and afterwards sold an interest in them to the plaintiffs, or whether he made the purchase jointly for plaintiffs and himself; that, if he made it on joint account, he was under a duty to act in good faith and could not lawfully obtain a secret profit or advantage to himself; and that, if he had made the initial payment in property of the value of less than $9,500, twelve-nineteenths of the reasonable market value of the property should be deducted from $6,000 and a verdict for plaintiffs returned for the balance.

It is urged (1) that oral evidence to add to or explain the agreement of August 9, 1922, should not have been received; (2) that the evidence fails to show that defendant obtained any secret profits in the transaction in question; and (3) that, if there were any, plaintiffs cannot recover them.

Evidence showing that plaintiffs and defendant were engaged in a joint venture was properly received. It did not contradict or vary the terms of the contract between them. It was not inconsistent therewith. It merely tended to show the true state of the relations between the parties. It warranted the jury in finding that they did not deal at arm's-length but were joint adventurers. If they were, the defendant owed to the plaintiffs the utmost good faith in his dealings with them and had no right to secure an unfair advantage to himself. All profits he obtained were for the benefit of all, and false representations as to the price paid for the property subjected him to liability to his associates. Gasser v. Wall, 111 Minn. 6, 126 N. W. 284; Gasser v. Wall, 115 Minn. 59, 131 N. W. 850; Mannheimer v. Phinney, 167 Minn. 279, 209 N. W. 7.

If defendant made the initial payment in property worth less than $9,500, he realized a profit represented by the difference between that sum and the value of the property. It is immaterial that the vendor of the lots was willing to accept the property in satisfaction of the amount of the initial payment. The vital fact is that defendant got a credit of $9,500 without paying that amount. His associates have a right to share in the advantage he thus gained. That much is settled by the cases cited above.

If the parties were copromoters of the corporation they subsequently organized, they stood in a fiduciary relation to the corporation and to those who subscribed for its stock. They were bound to act in perfect good faith in all their relations to the enterprise. Venie v. Harriet State Bank, 146 Minn. 142, 178 N. W. 170. It is contended that they were such copromoters and that, if anyone has been wronged, it is the corporation and it alone can maintain this action.

This raises a question as to whether the cause of action pleaded belongs to plaintiffs or to the Greysolon Company, and a further question as to whether defendant has a complete defense to this action if the company has a right to the profits he realized.

Mannheimer v. Phinney, supra, states the principles of law applicable in the situation we have here, and we pass to a consideration of the facts which are controlling, as we think.

The defense pleaded in the answer is substantially that defendant purchased the lots for himself and any profits he may have realized belonged to him alone. It is not alleged that plaintiffs were engaged in promoting the organization of the Greysolon Company when they bought an interest in the lots, but it is alleged that the company was subsequently organized and the title to the lots ultimately conveyed to it.

But, aside from the allegations of the answer, the evidence was such as to justify the jury in finding that from the beginning plaintiffs and defendant were engaged in a joint venture. If they were, a right of action accrued to plaintiffs as soon as they paid their money to defendant, of which they were not deprived by reason of the subsequent organization of the Greysolon Company. They re-

ceived stock in the corporation in an amount in excess of their actual investment in the lots. The corporation may have a right of action against them. Perhaps it should have had the benefit of the profits the defendant pocketed in the transaction with plaintiffs. But the corporation is not a party to this action and is not asserting any claim to the profits the defendant realized, and he ought not to be allowed to escape liability by interposing the corporation between himself and the plaintiffs to ward off their attack upon him.

Eight assignments of error call in question the court's refusal to give instructions requested by the defendant. It is unnecessary to discuss them for the reason that the only ones which we deem material are those which go to the point that the Greysolon Company and not the plaintiffs can recover, if in fact defendant obtained a secret profit in the purchase of the lots and in the transactions which followed. That point is covered by what we have said in disposing of the third contention made by defendant.

Judgment affirmed.