# E. L. BARRETT v. JOHN SHAMBEAU AND ANOTHER.[1]

December 9, 1932.

No. 29,054.

*Courtney & Courtney,* for appellant.
*Lewis, Hunt & Palmer,* for respondent John Shambeau.
*Lawrence H. Dow,* for respondent F. K. Randall.

[1]Reported in 245 N. W. 830.

Stone, J.

Defendants had a directed verdict, and plaintiff appeals from the order denying his motion for judgment notwithstanding the verdict or a new trial.

The action arises out of the promotion of the Senac Automatic Oil Burner Corporation, incorporated under the laws of Delaware, May 8, 1926, and at once admitted to do business in Minnesota. The initiators of the scheme were defendants, Randall probably taking the lead. They induced plaintiff to join and to subscribe and pay in $3,000, for which stock was issued to and received by him. The plan was that the corporation should take over from "Smith's Inventions, Incorporated" certain patent rights on an oil burner. The price, as Randall represented it to plaintiff, was to be $15,000. The patent rights were purchased by the corporation about May 20, 1926. The price on the face of the papers was $15,000, and the corporation paid that sum. But the real figure was but $3,500, defendants pocketing the difference through larcenous methods which need not be examined because the fraud now stands admitted. Plaintiff sues in this action for what he claims as his proportion of the profit of $11,500.

Later, in 1928, the Senac Automatic Oil Burner Corporation went into liquidation as to its Minnesota business. A receiver was appointed, who in separate actions sued these defendants to recover the illicit profit. The case against Randall went to trial, the fraud was established, and judgment ordered in favor of the receiver for $11,500. Judgment was not entered, for there was a settlement, approved by the court. Randall and Shambeau were made to disgorge. The result was a release and discharge by the corporation of its cause of action for the fraud perpetrated upon it by Randall and his guilty associates. Plaintiff was an innocent victim along with others whose contributions went to make up the $30,000 paid in as the initial cash capital of the corporation.

The verdict was directed for defendants upon the ground that the cause of action against Randall and his coconspirators, being in the corporation rather than the stockholders, was discharged by the receiver's settlement and release. In that view we agree.

■ There is no question that plaintiff was an innocent victim of Randall's fraud. But he became a copromoter with Randall. With the other promoters he subscribed for stock and was promised a managerial position with the company. He became one of the first directors. Plaintiff paid his money in the first instance to Randall, who passed it through a trustee bank account to or for the corporation. Plaintiff got stock for his share pursuant to the original agreement; and, as already stated, the corporation did take over the patent rights.

If after plaintiff had paid in his money the promoters had stopped short of actual incorporation, the cause of action would have been his. But he was one of the promoters, all of whom, innocent or guilty, were trustees for the corporation. When organized it took over whatever rights had vested in the promoters, or any of them, for its benefit. The purchase of the patent rights, made first by its promoters, was adopted by the corporation as its own. Battelle v. N. W. Cement & C. P. Co. 37 Minn. 89, 33 N. W. 327. So, automatically, it took over the cause of action for fraud inducing the contract. There was, thereafter, no cause of action in the individual stockholders who had been defrauded. Their rights had merged in those of the corporation. It follows that the settlement and discharge by the corporation extinguished the only remaining cause of action.

The argument for plaintiff correctly assumes that until the corporation was organized the undertaking of the promoters was a joint adventure. But the joint adventure ends with the organization of the corporation to the extent that the latter steps into the shoes of the promoters and takes over the rights they have acquired. Davis v. Las Ovas Co. Inc. 227 U. S. 80, 33 S. Ct. 197, 199, 57 L. ed. 426. There the argument was made [227 U. S. 86], following Old Dominion C. M. & S. Co. v. Lewisohn, 210 U. S. 206, 28 S. Ct. 634, 52 L. ed. 1025, that although "some of the syndicate" had been deceived the company had no resulting cause of action. But the decision went the other way because there, as here, the "original fraud practiced upon some of those associated with them in the

promoters' arrangement became operative against the corporation itself" immediately upon its organization. "The standing of the corporation results from the fact that there were innocent and deceived members of the corporation when the property was taken over by it." (In the instant case there were victimized stockholders other than plaintiff.) The same distinction was made here in American Barley Co. v. McCourtie, 150 Minn. 460, 185 N. W. 506. See 1 Fletcher, Corp. § 196, and 8 Minn. L. Rev. 520, for discussions of the distinctions between a fraud upon the corporation and one upon stockholders as individuals.

Graffam v. Lynott, 170 Minn. 434, 438, 212 N. W. 937, is distinguishable. There was a joint adventure which continued for some time before a corporation was organized to take over real estate. It was not even alleged that any corporation promotion was on when the parties acquired the property. The corporation itself was neither party to the action nor asserting claim to the profits made by the defendants. We held simply that, there being no other valid defense, the defendant could not on appeal "escape liability by interposing the corporation between himself and the plaintiffs to ward off their attack upon him." Here the corporation through its receiver (with whom, by the way, plaintiff was in privity as a stockholder) has asserted its claim, and it has been discharged by a settlement said to be ample. Subject to the distinctions made in Old Dominion C. M. & S. Co. v. Lewisohn, 210 U. S. 206, 28 S. Ct. 634, 52 L. ed. 1025, between antecedent and subsequent stockholders, it is "consistently held that the right of action" is in the corporation. 1 Thompson, Corp. (3 ed.) § 126. To the same effect is 14 C. J. 300. Of course, as in the ordinary case of corporate right which the management should but will not enforce, if the directors refuse to sue for secret profits, then relief can be obtained in the appropriate stockholders' action.

■ The discharge of the cause of action by settlement with the receiver was matter of affirmative defense. The burden was upon defendants both to plead and prove it. Their original answer was a general denial. Not until the trial itself was well advanced did

they ask leave to amend the answer to set up the release. The amendment was allowed, and the ruling is now assigned as error. It is sufficient to say that we cannot reverse on that ground because no abuse of discretion appears. But it is difficult to see why this affirmative defense was permitted to remain unpleaded for so long. The practice of withholding such a matter until trial is not to be commended. If the ruling had been against the amendment rather than for it, we would still have to say that there was no abuse of discretion. Such delay in bringing forward a meritorious and known defense smacks too much of making a mere game of the trial of a lawsuit, and hence is subject to disapproval on obvious and weighty grounds. To emphasize our disapproval statutory costs will be denied respondents.

Order affirmed.