DAVIS *v.* LAS OVAS COMPANY, INCORPORATED.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF
COLUMBIA.

No. 87.    Argued December 16, 1912.—Decided January 20, 1913.

Where the true consideration of a syndicate purchase is concealed and
    the property is conveyed at a higher figure in shares of stock to a
    corporation whose stock is held partly by the members of the syn-
    dicate and partly by others and the necessary increase of shares to
    pay for the property goes to some of the syndicate promoters as a
    secret profit, the corporation may maintain an action to require those
    obtaining the shares to surrender them for cancellation.
Fraud in the purchase of property which is to be conveyed to a corpora-
    tion composed partly of those purchasing the property and partly
    by others may become operative against the corporation itself and
    give it a right to maintain an action against some or all of those
    guilty of the fraud to protect the innocent stockholders who bought in
    ignorance thereof.

A recovery in such an action is not defeated because the benefits would inure to some of the guilty as well as to the innocent stockholders.

The corporation may sue one or all of those participating in such a fraud, and there is no fatal omission of parties if all are not joined.

Where the fraud on a corporation resulted in the issuing of more stock than would otherwise have been necessary, the proper decree is to compel those who fraudulently obtained the additional stock to surrender it for cancellation.

35 App. D. C. 372, affirmed.

THE facts are stated in the opinion.

*Mr. Samuel A. Putman* and *Mr. J. K. M. Norton* for appellants.

The company proved no right to the relief prayed for. It was merely a receptacle for the property, a creature erected for the convenience of the syndicate. The syndicate instead of taking the property in their own name put it in a company, which company was themselves, and only themselves, and gave it back to themselves in the shape of a certain number of shares of stock. *Old Dominion Copper Co. &c.* v. *Lewisohn,* 210 U. S. 206; Morowitz on Corporations (2d ed.), § 292.

When directors issue the whole stock of the company for property worth less than the par amount no one is injured. Cook, Corporations (6th ed.) § 651; *Blum* v. *Whitney,* 185 N. Y. 232 (1906); *Stratton* v. *Pines,* 126 Fed. Rep. 968; aff'd 135 Fed. Rep. 449.

When all the stock of a corporation is issued in payment for property the vendor cannot be held liable for misrepresentations as to the value of the property. *Foster* v. *Seymour,* 23 Fed. Rep. 65; *McCracken* v. *Robinson,* 57 Fed. Rep. 375; *Du Pont* v. *Tilden,* 42 Fed. Rep. 87; *Wood* v. *Corry Water Works,* 44 Fed. Rep. 146; *Fort Madison Bank* v. *Alden,* 129 U. S. 373; *Barr* v. *N. Y., L. E. & W. R. Ry. Co.,* 125 N. Y. 263, 273; *Seymore* v.

*Spring Forrest Ass'n.*, 144 N. Y. 333; *Thornton* v. *Wabash Ry. Co.*, 81 N. Y. 462, 467; *Parsons* v. *Hayes*, 14 Abb. N. C. (N. Y.) 419, 434; *King* v. *Barnes*, 109 N. Y. 267, 268; *Insurance Press* v. *Montauk Wire Co.*, 103 App. Div. (N. Y.) 472; *Higgins* v. *Lansing*, 154 Illinois, 301, 331; *Spaulding* v. *North Milwaukee Town Site Co.*, 106 Wisconsin, 481, 488; *Garretson* v. *Pacific Crude Oil Co.*, 146 California, 184; *St. L., F. S. & W. Ry. Co.* v. *Tierman*, 37 Kansas, 606, 633; *Walburne* v. *Chenault*, 43 Kansas, 356, 361; *Arkansas &c. Co.* v. *Farmers &c. Co.*, 13 Colorado, 587; *Tompkins* v. *Sperry Jones*, 96 Maryland, 560, 583; *Swift* v. *Smith,* 65 Maryland, 428, 435; *Merchants & M. S. B.* v. *Burlington C. & I. Co.*, 41 S. E. Rep. (W. Va.) 390; *Clark* v. *American Coal Co.*, 17 L. R. A. 557, 561; *Divine* v. *U. S. M. M. & Co.*, 38 S. W. Rep. 93, 98; *In re Ambrose* L. R. 14 Ch. D. 390, 395; *Salomen* v. *Salomen*, L. R. (1897) A. C. 22.

There is no legal difference between the holder of an option and a full owner of land. *Densmore Oil Co.* v. *Densmore,* 64 Pa. St. 49; *Cummings* v. *Beavers*, 103 Virginia, 230.

Neither Reid, who absolutely controls the company and its directors, nor Sowers can use the company to sue for an alleged wrong done to them by Davis and Phillips.

The syndicate agreement affords no basis of claim on the part of the company. The syndicate agreement was wholly between the parties thereto. *Hutchinson* v. *Simpson*, 92 App. Div. (N. Y.) 382; *Blum* v. *Whitney*, 185 N. Y. 232, 241.

The formation of the company, the taking of all its stock, and the putting of the title to the property in it were all merely the carrying out of the syndicate agreement. 3 Thompson on Corporations, 3d ed., § 3997.

The company has not authorized this suit. No action of a special meeting of the board of directors is valid unless all the directors are notified, even though the presence of

the absent ones could not have changed the result. 3 Thompson on Corp., § 3936.

A power of attorney from one director to another to represent him at meetings of the board is illegal and void. 3 Thompson on Corp., §§ 3909, 3925.

Herbert and Micou should have been made parties.

Here the members of the syndicate, although members of the corporation, are not joined and it is sought to throw the burden of their act upon a single one. See *Shields* v. *Barrow,* 17 How. 130; *Barney* v. *Baltimore,* 6 Wall. 280; *Jessup* v. *Illinois Cent. R. Co.,* 36 Fed. Rep. 738.

It was error to decree cancellation of stock.

Equity will surely not allow the plaintiff to purposely leave out some and make victims of a part without good reason. Thompson on Corp., §§ 465, 473; *Old Dominion Copper Mining Co.* v. *Lewisohn, supra.*

The measure of the recovery in equity is only the net secret profits. *McIlhenny's Appeal,* 61 Pa. St. 188; *Emma Silver Mining Co.* v. *Grant,* 11 L. R. Ch. Div. 918; 7 Am. & Eng. Enc., p. 22; *Littel* v. *Julius Lansburgh Furniture Co.,* 96 Virginia, 540. *Yeiser* v. *U. S. Paper Co.,* 107 Fed. Rep. 340, distinguished.

While a promoter may be ⌐harged with secret profits he is entitled to his expenses. *McIlhenny's Appeal,* 61 Pa. St. 188.

Parties are not allowed to take inconsistent positions in legal proceedings. 7 Am. & Eng. Enc. Law, p. 22. *Littel* v. *Julius Lansburgh Furniture Co.,* 96 Virginia, 540.

The authorities relied on by the appellee company are unlike the case at bar. They were cases where the public was brought in as subscribers and were deceived or defrauded, as in *Yeiser* v. *U. S. Paper Co.,* 107 Fed. Rep. 340; *Erlanger* v. *New Sombrero Phosphate Co.,* 3 App. Cases, 1218, and *Gluckstein* v. *Barnes* (1900), A. C. 240.

*Mr. J. J. Darlington* for appellee.

Memorandum opinion by direction of the court. By MR. JUSTICE LURTON.

This is a bill by the appellee to recover from appellants secret profits made by them as promoters of the Las Ovas Company in the purchase of a part of a tract of land known as Las Ovas in the Republic of Cuba, and also for the cancellation of certain shares of stock issued to them as promoters.

The facts essential to judgment are not in serious dispute. They are found clearly and fully stated in the opinion by Mr. Justice Gould of the Supreme Court of the District of Columbia, and again in the opinion of the Court of Appeals of the District by Mr. Justice Robb.

From the facts found by both courts it appears:—

a. That the appellants and certain other persons, not parties to this suit, signed an agreement on March 19, 1904, by which they agreed to purchase for a corporation which they were to organize a specified part of a tract of land in Cuba called the Las Ovas plantation, for the price of $34,000, to which it was later agreed to add another small parcel at an additional price of $1,000.

b. It was further agreed that they should organize a corporation, of which they should be the incorporators, with a capital stock of $150,000, and that 40 % of the shares should be issued to them for service as promoters and that the remaining stock should be subscribed for by them. For this subscribed stock they were to pay an amount sufficient to cover the purchase money of $35,000 and to create an expense fund of $5,000.

c. It was agreed that the property should, when acquired, be placed in the hands of one of the group of promoters until the formation of the company, and then conveyed to it.

d. The scheme was one originated and engineered by

the appellants, who at the time of this agreement had already secretly secured an option for themselves for the purchase of this property at the price of $20,000. To conceal the true consideration from their associates they caused the property to be conveyed by the vendor to one Escalante, a stranger selected by them. The deed to Escalante recited the true consideration. Later, in pursuance of the promoters' agreement, they caused Escalante to convey to the member of the syndicate selected to hold the title until organization, reciting a consideration of $35,000.

The corporation was organized as planned. The promoters' shares were duly issued and the remaining shares taken by the promoters upon the agreed terms, its officers and directors being composed exclusively of the members of the syndicate. Thereupon the property was transferred to the company and paid for, through appellants, out of the proceeds of the subscribed stock.

The result of the transaction was that the corporation was required to pay to those who had assumed to act for and represent it, a secret profit of fifteen thousand dollars and also to compensate them for their services in buying the land and organizing the company by issuing to each of them fifteen thousand dollars in non-assessable shares of its stock.

The decree below required the appellants to account for the profits realized by them, in part traced to certain shares in their hands, and to surrender for cancellation the shares issued to them as promoters.

It is now said that the corporation was "a mere convenient receptacle for the property, erected for the convenience of the syndicate." That the property was bought by the syndicate for their own advantage and that the corporation included only the members of the syndicate. That the stock of the company was all taken by the syndicate, who, for property which was their own, agreed

to pay enough to cover the purchase price and create a small expense fund.

Upon this contention it is urged that the corporation has no right to the relief sought, as the whole transaction was a mere form adopted by the parties for their own convenience as owners of the property and owners of the corporation. It is then said: "If we admit, for the purposes of this point, that appellants did deceive some of the syndicate, what has the company to do with it?" For this they cite *Old Dominion Copper Company* v. *Lewisohn*, 210 U. S. 206, where it was held that a subordinate fraud practiced by some of the promoters of a corporation upon some of their associates was a matter wholly between them and the syndicate which gave rise to no corporate right of action in the absence of innocent incorporators or stockholders.

But that is not this case. Some of those, if not all, interested by appellants in the property and in its purchase for a proposed consideration were ignorant of the real price which they were to pay for it, and were not, therefore, in complicity with their scheme to make a secret profit. These innocent members of the syndicate became stock subscribers and directors of the company, as did appellants. The buyers and sellers were not the same. Those of the syndicate assuming to act for the corporation in acquiring the property were under obligation to disclose the truth and deal openly. In the absence of such disclosure the corporate assent was obtained on false grounds. The wrong was done when those members of the syndicate not in complicity with appellants subscribed to the stock of the company and aided their guilty associate managers in the corporate action necessary to the corporate acquisition of the property at the exaggerated price placed upon it by those who were to realize a secret profit. Thus, the original fraud practiced upon some of those associated with them in the promoters' arrangement became operative against the corporation itself. The standing of the

corporation results from the fact that there were innocent and deceived members of the corporation when the property was taken over by it.

Neither is the corporate right of action defeated by the fact that the recovery will inure to the guilty as well as to the innocent, nor is the fact that all of the parties who may have shared in the secret profits are not sued fatal to the case. The corporation may well sue either one or all of those who received secret profits. There is no want of necessary parties because all are not here sued.

The distinction between a case in which all of the owners of the property and all of the members of the buying corporation are the same persons, and participate in the profit realized, and the case here presented is fully recognized in *Old Dominion Copper Company* v. *Lewisohn, supra,* as well as in *Phosphate Company* v. *Erlanger,* 5 Ch. Div. 73, and in the well considered opinion of Judge Severens in *Yeiser* v. *U. S. Paper Co.,* 107 Fed. Rep. 340.

There was no error in cancelling the shares issued to the plaintiffs in error for promotion of the corporation. They and the other members of the syndicate received these shares upon the assumption that they had in good faith served the corporation in the procurement of the property. Obviously appellants were serving themselves to the detriment of the corporation and innocent subscribers to its stock. In such a situation the corporation may recover the shares.

*The decree will be affirmed.*