**FLINT RIVER PECAN CO. et al. v. FRY et al.**

**FRY et al. v. FLINT RIVER PECAN CO. et al.**

Circuit Court of Appeals, Fifth Circuit.
November 30, 1928.

Rehearing Denied January 12, 1929.

Nos. 5403, 5413.

In No. 5403:

Geo. S. Jones, of Macon, Ga. (Bennet & Peacock, of Albany, Ga., and Jones, Jones & Johnston, of Macon, Ga., on the brief), for appellants.

Howell Cobb, J. R. Pottle, I. J. Hofmayer, and Leonard Farkas, all of Albany, Ga. (Milner & Farkas and Pottle & Hofmayer, all of Albany, Ga., on the brief), for appellees.

In No. 5413:

Howell Cobb, J. R. Pottle, I. J. Hofmayer, Leonard Farkas, and Thos. H. Milner,

all of Albany, Ga. (Milner & Farkas and Pottle & Hofmayer, all of Albany, Ga., on the brief), for appellants.

Geo. S. Jones, of Macon, Ga., R. P. Marks and Harry T. Gray, both of Jacksonville, Fla., and Sam S. Bennet, of Albany, Ga. (Richard P. Marks and Harry T. Gray, of Marks, Marks & Holt, both of Jacksonville, Fla., Bennet & Peacock, of Albany, Ga., and Jones, Jones & Johnston, of Macon, Ga., on the brief), for appellees.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. These two cases involve appeals from a judgment in which the court below sustained in part and otherwise overruled exceptions to the master's report upon an accounting of the affairs of the Flint River Pecan Company.

The record presents a great volume of pleading and evidence, but the matter was thoroughly covered by the master in his findings of fact and conclusions of law, so that the really important issues have been greatly narrowed. The suit was originally brought by W. W. Fry, a citizen of California, who alleged the ownership of 40 shares of stock in the Flint River Pecan Company, a Georgia corporation, on behalf of himself and such other stockholders as might desire to join therein. He made the Pecan Company, the officers thereof, and certain other individuals parties defendant, as well as the Title & Trust Company of Florida, trustee, under a bond mortgage executed by the defendant corporation. Petitioner alleged numerous acts of mismanagement, fraud, etc., on the part of the defendants, prayed for the appointment of a receiver; that the defendants be required to account for and surrender to said receiver all moneys and property of the Pecan Company which they had improperly received, or that a decree be entered against them for the value thereof; that the deed of trust to the Title & Trust Company be canceled as a cloud upon the title of the defendant company's property; that certain stock alleged to have been fraudulently and fictitiously issued, be ordered surrendered and canceled; and that, if the deed of trust were found to be valid, the holders of the bonds be ordered to intervene and set up their respective rights to the proceeds arising from the sale of the mortgaged property. Afterwards some 41 other stockholders intervened and joined petitioner in his demands against the defendants.

Defendants denied the allegations of fraud and mismanagement, but pleaded lach-es and ratification by the directors and a majority of the stockholders to many of the matters complained of. Defendant Trust Company by cross-bill alleged a proper execution of the mortgage, the issuance of the bonds, the default of the Pecan Company, and asked for foreclosure, as well as other appropriate relief.

As before stated, the master made a report embracing elaborate findings of fact and conclusions of law, as to which exceptions were filed by both sides, but the lower court approved the whole, except as to two points, to wit: (1) The amount of salaries allowed the officers and managers of the company during the period of their administration; and (2) as to the disallowance of profit to Foy & Shemwell upon the sale of certain property to the Pecan Company, both of which claims were allowed in full. All other exceptions by each side were overruled.

We shall dispose of the appeal No. 5403 first. This record presents only two specifications of error, to wit: (1) The sustaining by the court of the master's finding that the property turned into the corporation for its stock by Foy & Shemwell and Dermott S. Shemwell was overvalued to the amount of $124,866.61; and (2) the holding that plaintiffs were entitled to a decree for the value of the stock or that it should be surrendered for cancellation, notwithstanding the delays, estoppel, and ratification pleaded by defendants.

We are convinced that the proof amply sustains the finding that the property exchanged for stock by defendants was not worth the sum claimed for it by the amount mentioned, and that the decree ordering them to pay therefor, unless it was surrendered for cancellation within the delays allowed by the judgment, was properly entered. The circumstances shown by this record do not warrant the conclusion that the present petitioners were sufficiently conversant with the value of the property or other facts which would amount to a ratification of the transaction, or justify the conclusion that they should now be precluded from attacking the same. The management of the company, including the fixation of values upon the property put into the corporation by the defendants, was entirely in their hands while many of the petitioners were persons residing in distant sections of the country, and without reasonable opportunity to know anything about the value of the property exchanged for the stock.

What has been said likewise disposes of the second contention that there was error

in the decree for the par value of the stock, but with the right to surrender it for cancellation. The latter privilege was quite favorable to defendants, in view of the fact that for several years they had controlled the corporation by virtue of this excessive issue of stock, but in the prayer of the plaintiffs this identical relief was asked; i. e., that the stock be surrendered or defendants pay therefor, hence we think the master and the court below were correct in granting relief in that form.

The record in No. 5413 covers the appeal of plaintiffs, who have grouped their assignments of error to the rulings of the court below under some seven different headings, which will be disposed of in consecutive order. Under heading No. I, embracing assignments Nos. 1 and 2, they complain of the ruling which allowed the defendants to surrender for cancellation, instead of paying for, the excess stock of $124,866.61 issued to themselves in the formation of the defendant company. As above stated, this was in accordance with plaintiff's prayer, and the circumstances disclosed by the record we do not think show an abuse of discretion in allowing the stock to be surrendered, instead of giving an unconditional money judgment for its value. Plaintiffs owed themselves the duty to exercise some measure of vigilance, and they were from time to time furnished information in a general way as to the affairs of the company, which they allowed to go ahead under the management of defendants for some five or six years without complaint, and to now require the latter to pay for the stock in cash, with the present financial condition of the company and in the light of all the circumstances, we think would be a harsher remedy than the record justifies. See Davis v. Las Ovas, 227 U. S. 80, 33 S. Ct. 197, 57 L. Ed. 426; Yeiser v. U. S. Board & Paper Co. (C. C. A.) 107 F. 340, 52 L. R. A. 724; Cook on Corporations (6th Ed.) § 35 et seq.

■ Heading No. II embraces assignments Nos. 3, 4, and 5, directed to the allowance by the court below of the full amount claimed by defendants Foy & Shemwell, as salaries or compensation for services, overhead, etc., in the management of the company. A careful examination of the record convinces us there was error in the allowance of these items. The defendants to a large extent used the property and credit of the Flint River Pecan Company for their own purposes, acted as "bankers," using large deposits or credits due it, without interest or any equivalent return to the corporation, pledged its bonds and notes for their own account, issued approximately $150,000 of additional stock, to be given purchasers of its mortgage bonds in the nature of a bonus, for which the court below, on the recommendation of the master, also ordered them to pay or surrender the stock for cancellation within a fixed period, and altogether they dealt with the property and affairs of the company in such manner as in our opinion to forfeit the right to salaries or pay for their services. Backus v. Finkelstein (D. C.) 23 F.(2d) 357. For these reasons, the entire claim of $42,000 for salaries and services will be disallowed and rejected.

■ Heading No. III deals with assignments 6 and 7, taken to the refusal of the court to sustain the master in disallowing the sum of $25,544 to defendants, which represented the difference between what they paid for the Colquitt place and the price at which it was sold to the Flint River Pecan Company. There is some conflict in the evidence as to the extent to which the plaintiffs were acquainted with the nature of this transaction, but we are constrained to agree with the court below, who evidently found there was sufficient disclosure to support allowance to the defendants of the profit made upon this transaction. They had previously made a bargain for this property for themselves at $15 per acre, and when they agreed to turn it into the company at $25 we think it was reasonably worth that price, and that in the meeting held at which this and other matters were discussed they made known to appellants, their associates and representatives, the facts.

■ Heading No. IV embraces the eighth assignment and complains of the allowance by the court below of only 7 per cent. interest upon the judgment for the amount of $25,000 of bonds appropriated by defendants. The bonds actually bore 8 per cent., but the record does not show that any interest has been or will be paid by the Pecan Company thereon. Besides, the recovery was for full par value, with 7 per cent., whereas it is stated, and not denied, that the bonds were sold for 85 cents on the dollar. In an action for accounting, the legal rate of interest is ordinarily allowed, and in the state of Georgia this is fixed at 7 per cent. Parks' Georgia Code, § 3426.

■ Heading No. V, covering assignment No. 9, complains of that part of the decree below which provided that, in event of appeal by plaintiff, certain portions of the judgment for money should be stayed until termination of the appeal, thereby depriving

appellant, as it is contended, of the lien which otherwise would have been obtained under the law of Georgia, the effect of which was to give defendants the benefit of supersedeas without bond. We think this ruling was within the sound discretion of the court. In some jurisdictions execution of any part of a single judgment destroys the right of appeal. In the same decree from which this appeal is taken, the court below appointed a permanent receiver for the property of the corporation, and the whole subject-matter of the litigation was so involved and of such a nature that it was impracticable to definitely dispose of any particular part without taking into consideration others, as well as the possible changes or consequences of the decisions on appeal. Considering the whole circumstances, we think the lower court exercised a proper discretion in attaching the conditions complained of to its decree. See Eaton v. Cleveland, etc., Ry. Co. (C. C.) 41 F. 421.

Heading No. VI covers the tenth assignment, which was taken to a clause in the judgment which permits the defendants to assert against the Pecan Company in appropriate proceedings in the future "any claim they or either of them may acquire or may have acquired against the Flint River Pecan Company, since the filing of the original bill herein, the validity, legality, rank, and propriety of same to be then determined." The record shows that there was not a complete liquidation of the affairs of the corporation, or a full settlement of all of the transactions between it and the defendants, such as those growing out of their indorsements on its obligations while acting as bankers, as well as possible credits upon obligations for which they were held responsible. We likewise find no abuse of discretion in the inclusion of this provision in the judgment.

Division VII, which included assignments 11, 12, 13, and 14, complains of the holding that the bond mortgage of $200,000 created a valid lien upon the company's property and of the refusal to find that the arrangement by which the purchasers of bonds were to receive stock in the corporation as a bonus made the contract usurious and forfeited the right of the holders to all interest. With respect to the validity of the proceedings by which the bonds were issued, it is sufficient to say that at least a large portion thereof have found their way into the hands of innocent persons, some of the proceeds have gone into the treasury of the company and been used by it, and we think it now too late to upset this condition, even if the contention of the plaintiffs upon the point in question could be held sound. The lower court reserved the right to the company, or its proper representative, to contest the bona fides of all claims upon these bonds, and to require the holders to show that they were in good faith before receiving payment. As to the charge of usury, all of the $150,000 of stock issued in connection with the mortgage has been ordered surrendered and canceled as having been issued without consideration, nothing of value has been received by any bondholder therefor, and whether the matter be treated as controlled by the law of Georgia or by that of Florida, where the acceptance of the trust was made and the bonds and interest were to be paid, we do not think the claim of usury in the sense contended for can be sustained.

It is therefore ordered and decreed that the claim of $42,000 for salaries or services to defendants be disallowed and stricken out, and that otherwise the judgment appealed from be and the same is hereby affirmed.