**A. B. LEACH & CO., Inc., v. GRANT.**
**No. 4663.**

Circuit Court of Appeals, Sixth Circuit.
Jan. 9, 1932.

DENISON, Circuit Judge, dissenting.

Edward R. Johnston, of Chicago, Ill. (Day & Day, of Cleveland, Ohio, Poppenhusen, Johnston, Thompson & Cole, of Chicago, Ill., William L. Day and Donald W. Kling, both of Cleveland, Ohio, and Conrad H. Poppenhusen and Henry Jackson Darby, both of Chicago, Ill., on the brief), for appellant.

Andrew M. Henderson and James P. Wilson, both of Youngstown, Ohio, for appellee.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

This case is before us on the receiver's claim for an accounting for the bonds which appellant received in exchange for 3,000 shares of the Struthers Company's preferred stock. See (C. C. A.) 27 F.(2d) 201; 280 U. S. 351, 50 S. Ct. 107, 74 L. Ed. 470; 281 U. S. 689, 50 S. Ct. 236, 74 L. Ed. 1119. When the exchange was made, the outstanding stock of the company consisted of certain common stock and 12,500 shares of 7 per cent. cumulative preferred stock of the par value of $100 each. The appellant purchased the preferred stock when it was issued, and sold it in part to the public, but at the time of this transaction still held 3,000 shares. The stock had no voting power except under certain conditions of default, but was entitled to priority over the common stock both as to dividends and principal. The charter of the company provided that the preferred stock could be redeemed only from net surplus profits at the end of each year after payment of preferred dividends and taxes, and, further, that no mortgage should be placed on the company's assets without the written consent and waiver of the holders of three-fourths of the preferred stock. The book surplus of the company at the end of 1921 was about $82,000. By May 1, 1922, this surplus had been wiped out and a deficit created. At that time the company was largely indebted to various

banks and was without capital for operating purposes. It was suggested by an officer of one of these banks, who was also a stockholder and director of the company, that the company place a mortgage on its property to refund this indebtedness and obtain working capital. Acting upon this suggestion, the president and vice president of the company, after conferring with representatives of appellant, decided upon an 8 per cent. bond issue of $1,500,000. At the same time they entered into an optional agreement with appellant for the sale of the bonds at 90½, with accrued interest, agreeing to accept in part payment therefor the 3,000 shares of preferred stock at $85 a share and accrued dividends.

After entering into this agreement with appellant, the officers of the company began soliciting the consent of the preferred stockholders to the execution of the mortgage. Requests for consent were made by mail, and were accompanied with representations that the bonds were to be issued to refund floating debts and provide working capital. These officers stated to the stockholders that they had "discussed the matter with A. B. Leach & Company, Inc., of New York, who sold our preferred stock, and the proposed financing carries with it their unqualified approval." Appellant also circularized the preferred stockholders, representing that it had made an exhaustive examination of the affairs of the Struthers Company, and stating that in its opinion it was to the best interests of the preferred stockholders to execute the waivers. These circulars, after stating that the "proposed financing" would enable the company to pay all its debts and leave it "sufficient working capital," concluded by saying: "We unhesitatingly recommend that you give your consent." The other preferred stockholders held small lots of stock, were widely scattered, and were never informed that it was contemplated or understood that any of the bonds were to be used to take up appellant's preferred stock. Appellant gave its consent for the stock which it held, and a sufficient number of other shareholders consented to make the total number of consenting shares, including appellant's, 9,911. Having thus received the consent of three-fourths of the preferred stock, a stockholders' meeting was held, at which the bond issue was authorized. The only stockholders present at this meeting were the president of the company, who owned a controlling interest in its common stock, the vice president and treasurer, who was a son of the president, the company's

secretary, and the bank official who had suggested that the bonds be issued. None of them appears in the list of preferred stockholders. Thereafter the bonds were issued and sold to appellant upon the terms provided in the optional agreement.

The trial court, being of opinion that the transaction was illegal and a fraud upon creditors and other preferred stockholders, rendered judgment for the receiver against appellant in the sum of $255,000, the value placed on the 3,000 shares of preferred stock in making the exchange, and for the further sum of $46,920, the amount of interest the Struthers Company had paid on the bonds that were exchanged for the stock; but decreed alternatively that, if appellant should surrender to the trustee for cancellation bonds of the company of the face value of $255,000, together with the unpaid interest coupons attached, and should pay the interest judgment, together with interest thereon at 6 per cent. per annum from the date of payment thereof by the company, then the face value of such bonds so surrendered, but not the unpaid coupons thereon, should be credited upon the principal of the judgment. It was further ordered that the 3,000 shares of preferred stock should remain in the custody of the clerk of the court subject to the orders of the appellant upon its compliance with the terms of the decree.

■ The finding of illegality is attacked upon the ground that the Struthers Company had the power, under the Ohio Statutes (Act of March 1, 1917), to purchase its preferred stock from such persons and at such times and prices as it might choose. We do not find it necessary to determine that question, since, no matter what the company's powers were, it is obvious that, if the contract was procured by fraud, it ought not to be sustained against stockholders who have been prejudiced thereby and who have in no wise ratified its execution. None of the preferred stockholders save appellant was advised, at the time the waivers were solicited and given, of the agreement between appellant and the Struthers Company as to the sale of the bonds. It was represented to them that the proceeds of the bonds would pay the floating indebtedness and provide ample working capital. The appellant knew that this would not be possible, and that, instead of the company's receiving for the bonds which were exchanged for the 3,000 shares of stock a sum approximating $255,000 which would be available for working

capital, the net result of the transaction, besides paying current·indebtedness, would be to convert its preferred stock into a mortgage lien. Had the other preferred stockholders known this, it is inconceivable that they would have consented to the issue. Appellant must have known that they° would not, for it not only failed to disclose to them the terms of its contract with the company, but actually concealed from them the existence of the contract, leading them to believe that the proceeds from the bonds would provide the company with ample capital for operating purposes. In our opinion, it practiced a fraud upon the other preferred stockholders.

█ It is said that, even if the Struthers Company was without power to purchase its stock, it had the power to issue and sell its bonds, and, the contract by which it did so having been completely performed by both parties, the court is without power to grant relief therefrom except upon a restoration of the status quo. But this is not, as the argument assumes, a suit on behalf of the corporation for the rescission or partial rescission of an ultra vires contract; it is a suit on behalf of creditors and stockholders to recover for a fraud. The receiver, it is true, has not tendered back to appellant what the Struthers Company received in the transaction. He is not in position to do so, and in that situation the court will not require him to do the impossible thing of making a tender, but will take notice of all the circumstances, and, if equity and justice require, will permit a recovery on the implied obligation of the appellant to return the property which it has no right to retain, or, failing to do so, to make compensation therefor in money. Pullman Car Company Case, 139 U. S. 24, 60, 11 S. Ct. 478, 35 L. Ed. 55; Davis v. Las Ovas Co., 227 U. S. 80, 33 S. Ct. 197, 57 L. Ed. 426. That is what the District Court did, and we find nothing in its decree to indicate that the restitution adjudged is inequitable. The bonds have been sold, and appellant has not shown, nor attempted to show, that it did not sell such of them as it paid for in cash at a price in excess of what it paid for them, or that it sold those for which a recovery is sought for less than the amount of the recovery. Moreover, the decree gives to it the right to return the equivalent of the bonds which were exchanged for the stock and take back the stock.

█ The claim of estoppel rests upon the proposition that appellee represents the corporation whose receiver he is, and, as the corporation was a party to the contract, and would not be permitted to attack it, the receiver cannot. The argument overlooks the circumstance that this contract was not merely probably ultra vires, but was fraudulent, and, further, that the receiver represents innocent preferred stockholders. It may be that a stockholder of a corporation who gives his consent to an ultra vires corporate act, knowing it to be such, will not thereafter be permitted to question its validity. That, however, is not this case, for the appellant obtained the approval of such preferred stockholders as gave their consent by withholding from them information which it had, and leading them to believe that the bonds would be sold and the funds used for operating capital. Under such circumstances, there is no ground for contending that these stockholders are in pari delicto with the appellant. Moreover, the receiver represents, not only the preferred stockholders whom appellant misled into giving their approval, but also preferred stockholders who never gave their approval, and who in no way participated in the transaction.

The suggestion that there ought not to be a recovery because of the difficulty in determining who shall share in it is a matter that does not concern the present case. Perhaps the recovery would be for the benefit of bondholders as well as preferred stockholders. The preferred stock is now worth nothing, and, even if the recovery is for the benefit of the defrauded stockholders alone, it will not pay their stock in full. Whether bondholders and precedent creditors, if there are such creditors, have preferential rights in the recovery, are matters that we do not deem it necessary to decide. Those questions may be determined by the receiver under the orders and directions of the state court.

The decree is affirmed.

DENISON, Circuit Judge, dissenting.